## AFFIDAVIT

I, Christopher Pyler, being duly sworn, hereby depose and state that the following is true to the best of my information, knowledge, and belief:

## INTRODUCTION AND AGENT BACKROUND

1. Your affiant, Detective Christopher Pyler, hereby informs the Court that he is a commissioned peace officer with the Westminster, Colorado Police Department, and is currently assigned as a task force officer with the FBI Rocky Mountain Safe Streets Task Force ("RMSSTF"), and is responsible for investigating violent crimes in the Denver area, including robberies. Your affiant has been a police officer in Colorado for more than twenty-four years and has training and experience in the investigation of property crimes, financial crimes, and violent crimes. The information contained in this affidavit is based upon information compiled from personal involvement, witness/victim interviews, fellow law enforcement officers, informants and by reading official police reports.

2. This affidavit is submitted in support of an application for a search warrant for a described in Attachment A (hereinafter "Subject Account"), and the data located therein, there being probable cause to believe that located in the place described in Attachment A are items described in Attachment B, being evidence, fruits, and instrumentalities of violations of 18 U.S.C. § 1039, Fraud in Connection with Obtaining Confidential Phone Records.

3. This affidavit is submitted in support of an application for a warrant to search the subject account relating to the investigation of unlawful legal demands submitted to T-Mobile, Sprint, and Verizon Wireless by Matthew Marre and any co-conspirators, which is more fully

described in Attachment A, for the evidence, fruits, and instrumentalities of violations of 18 U.S.C. § 1039 (Fraud in Connection with Obtaining Confidential Phone Records).

4. Your affiant believes Matthew Marre contacted the law enforcement assistance divisions of Verizon, Sprint and T-Mobile, and fraudulently claimed to be a law enforcement officer in the State of Colorado.  Marre claimed he was investigating an emergency that potentially involved death or serious injury for the purpose of obtaining legally protected information without legal process from a court of record.

5. Based on your affiant's training and experience and the facts set forth in this affidavit, your affiant submits that there is probable cause to believe that evidence is located within the subject account as described in this affidavit and further in Attachment A and such things listed in Attachment B which contain evidence of violations of 18 U.S.C. 1039.

6. Your affiant has obtained the facts set forth in this affidavit through personal participation in the investigation described below; from oral and written reports of other law enforcement officers participating in this and related investigations; from interviews of sources of information; and from records, documents and other evidence obtained during this investigation.  This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant to search the listed premises for evidence of violations of 18 U.S.C. § 1039 and does not set forth all of your affiant's knowledge about this matter.

## JURISDICTION

7. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  [18 U.S.C. §§ 2703(a), (b)(1)(A), &

(c)(1)(A)]  Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." [18 U.S.C. § 2711(3)(A)(i)]

## INVESTIGATION

8. Your affiant knows through his experience in law enforcement that there are four national cell phone carriers that provide service to cell phone customers throughout United States to include Colorado.

9. Each of the four carriers --  Sprint Corporation, Verizon Wireless, T-Mobile USA, and ATT Wireless -- have 24 hour Law Enforcement assistance operators that are available to assist in emergencies across the United States to aid any law enforcement agency that is involved in an emergency that potentially involves death or serious bodily injury. This assistance typically involves assisting law enforcement in locating cell phones that may be in the possession of wanted fugitives, suicidal persons, or in assisting with ongoing felony investigations, and active crime scenes where further acts of violence could occur.

10. Information is provided by these cell phone companies with legal court process compelling the companies to assist law enforcement; or, in an emergency, without legal process if the situation potentially involves death or serious bodily injury that could occur without immediate action.

11. On November 26, 2018, Detective Michael Thrapp was assigned to the FBI Rocky Mountain Safe Streets Task Force (RMSSTF) as a Task Force Officer (TFO).  He received a report of a suspected wire fraud with the victim being Verizon Wireless Incorporated where the Law Enforcement Help Center was being exploited.

12. TFO Thrapp contacted Verizon and was advised the following:  Since June of 2018 until November 2018, five emergency requests for cell phone data were made on the Verizon Law Enforcement Help Center by a male who identified himself as a Matthew Marre, claiming to be an investigator for the "Colorado Department of Public Safety" and the "Colorado Task Force."  Marre used the phone number 970-408-0773.

13. During all five calls Marre was believed to be acting in the capacity of a law enforcement officer requesting immediate release of cell phone information from Verizon Wireless under federal laws 18 U.S.C. 2702 (b) and or 18 U.S.C. 2702 (c) (4).  Each time Marre claimed an emergency that potentially involved the danger of death or serious physical harm.  Verizon released the requested cell phone records to include GPS location to Matthew Marre.

14. On the fifth call in November of 2018, Verizon employees became suspicious that Marre may not be a law enforcement officer.  When Verizon employees called Marre back to verify if he was with a law enforcement agency, they found that the number provided by Marre did not belong to a legal law enforcement agency. Verizon notified the FBI that protected cell phone data to include GPS data was released to a private citizen claiming to be a law enforcement officer.

15. TFP Thrapp researched the phone number used by Marre for these requests, which was identified by Verizon Wireless as 720-354-0721.  Publicly available information verifies this number is used by a Matthew Marre.

16. Multiple public sources, as well as law enforcement data bases show Matthew Marre is working as a contractor for at least three Bail Bonds companies to locate and detain persons who have court bonds posted throughout various courts in the state of Colorado.  The common

or "street" term for this job action is often called a "bail bondsman", "bounty hunter" and "fugitive recovery agent", all who are private citizens with no law enforcement power under state or federal law. Further, Marre was previously convicted of a felony and is thus ineligible for employment as a law enforcement officer.

17. TFO Thrapp, believing Marre might have been in contact with the other three main national cell phone companies, contacted ATT, T-Mobile and Sprint Wireless law enforcement assistance departments to see if Matthew Marre, using either of the phone numbers 970-408-0773 or 720-354-0721, had requested emergency information. Both T-Mobile and Sprint responded that they had been contacted by Matthew Marre.

**Sprint**

18. In the course of the investigation, Sprint provided two requests made by Marre, dated 11/09/2018 and 11/15/2018. For the request from Marre dated 11/09/2018 (Sprint event #1) the four page document had a generic fax cover sheet to Sprint from Matthew Marre.

19. The second of the four pages was a copy of a cover letter from "COLORADO PUBLIC SAFETY", Fugitive Recovery Division, 308 Mountain View Avenue. Suite B., Johnstown CO 80513, (970)-408-0773 from Investigator Matthew Marre, Matthewmarre@cotf.us (720)-354-0721(cell) and (970)-408-0773 (Main).

20. This second page includes an insignia of a six pointed star badge with a facsimile of the seal of the State of Colorado in the middle and the words "Colorado Public Safety Fugitive Recovery Agent" in the badge.

21. The third of four pages is a "STORED COMMUNICATION, GPS/PING EMERGENCY REQUEST FORM" which is a Sprint supplied form requiring specific information prior to

releasing data.  Data requested on the form, which is outlined in this affidavit and underlined bold black, was completed by Mathew Marre and returned to Sprint.

**LAW ENFORCEMENT AGENCY (LEA)**   "Colorado Public Safety (Task Force)"

**LEA PHONE NUMBER**                          "(970) 408-0773"

**LEA TITLE**                                         "Investigator"

**LEAE-MAIL (Official, Secure)**              **"Matthewmarre@cotf.us"**

The pre filled form then states in italics ***"I hereby certify on behalf of the above mentioned LEA that an emergency involving danger of death or serious physical injury to any person exists and requires disclosure without delay of communications relating to the emergency.***

***Below is my description of the emergency situation, (please indicate the Sprint phone number or other relevant information.)***

The third page has additional questions and responses from Marre.  These include the following:

**SPRINT PHONE NUMBER or CUSTOMER NAME**              "9705391527"

**EMERGENCY DESCRIPTION**       **"**Subject made suicidal statements to family members and investigator". "Subject has means to carry out threats".

**Request Sprint provide the following service(s) (mark all that apply):**

**Call Detail Records WITH Cell Sites (last 7 days)**  An "X" was checked next to box.

**GPS (Location)\***                                An "X" was checked next to box.

22. The last page of Marre's request then has a pre filled statement as follows "**All location information assistance will terminate if the valid legal demand or customer consent form is not provided to Sprint within 48 hours. The valid legal process or customer consent should be faxed to 816-600-3100.**"

This last page then has a signature line which is signed "Matthew Marre" and dated 11/9/18.

23. The second request to Sprint made by Marre, (Sprint event #2) is dated 11/15/2018.  This second request is similar in most aspects as it again relates to the same target number of "9705391527" and requests call detail records with cell sites for the past 7 days as well as GPS location.

This second document is signed "Matthew Marre" and dated 11/15/18.

**Verizon**

24. Verizon reported that they have six separate cases where a person:

a. Represented himself to be Investigator Matthew Marre;

b. Used the phone number 720-354-0721 to make requests; and,

c. Indicated exigent circumstances by claiming the targets of the requests were suicidal.

25. On 06/23/2018  (Verizon event #1) a caller to the Verizon Law Enforcement Help Center claiming to be Marre requested a location service on cell phone number 802-323-9137.  A Verizon employee emailed Marre the **VERIZON EMERGENCY SITUATION DISCLOSURE** form for Marre to fill out for his request.

26. The form stated *"UPON receipt of this completed form, Verizon Wireless may divulge records or other information to government entities in certain emergencies, pursuant to 18 U.S.C. 2702 (b) (8) or 2702 (c) (4) or an equivalent state law*.

The form continued with, "**Does this request potentially involve the danger of death or serious physical injury to a person, necessitating the immediate release of information relating to that emergency?"** Marre checked the "yes" box and requested location information for the cell phone number of 802-323-9137.

27. Marre stated under *"requesting investigative or law enforcement officer"* that he was Matthew Marre, an investigator for the Colorado Department of Public Safety, 700 Kipling St, Denver Colorado 80215, with a phone number of 970-408-0773 and email address of "Matthew.Marre@cotf.us". The signature line has the oath statement of **"I certify that the foregoing is true and correct and understand that Verizon Wireless may rely on this form to make an emergency disclosure to my law enforcement agency or government entity pursuant to 18 U.S.C. 2702 (b)(8) or 2702 (c)(4)."** This form was signed "Matthew Marre" and dated 06/23/18.

28. Upon receipt of this form, a Verizon Wireless employee released location data to Marre for cell phone number 802-323-9137.  On 06/23/2018 at 22:34, Marre called back to Verizon Law Enforcement line requesting an updated location service (GPS) for this number. Verizon provided the updated information to him at 00:25 a.m. on 06/24/2018.

29. On 10/14/2018 (Verizon event #2) Matthew Marre called Verizon Law Enforcement Help Center and requested from employee RM location services (GPS) on cell phone number 970-568-6632.  As with the prior request, Marre checked "yes" indicating the situation potentially

involved the danger of death or serious physical injury to a person.  In the pre filled lines stating "*requesting investigative or law enforcement officer*" and *"Law Enforcement Agency"* Marre typed name "Inv Marks, PSAP" and an email address of "Matthew.Marre@COTF.us".  The signature line stated  **"I certify that the foregoing is true and correct and understand that Verizon Wireless may rely on this form to make an emergency disclosure to my law enforcement agency or government entity pursuant to 18 U.S.C. 2702 (b)(8) or 2702 (c)(4)."** This form was signed "Matthew Marre" and dated 10/14/18.

30. On 10/15/2018 (Verizon event #3) Matthew Marre called the Verizon Law Enforcement Help Center and requested emergency request for location service on 970-673-2072 Marre was emailed an emergency form. However, the form was not returned.  Verizon employee TS was advised that Marre was investigating a suicidal subject and needed location services. Verizon noted in its call log that information was provided to Marre.

31. On 10/20/2018 (Verizon event #4) Matthew Marre called the Verizon Law Enforcement Help Center and requested locator serviced (GPS) on cell phone 479-659-9352.  Verizon emailed Marre an emergency form.  However, it was not returned.  Verizon employee AT noted in her call logs that Marre claimed the emergency was a suicidal subject.  Marre was provided location services to the number 479-659-9352.  Marre called four more times to obtain updates on this cell phone location. Verizon notes show that updated data was provided to Marre.

32. On 10/21/2018 (Verizon event #5) Matthew Marre called Verizon Law Enforcement Help Center and requested from Verizon employee RM location services (GPS) on cell phone

number 970-673-2072, claiming the person related to the phone number was a suicidal. Note this is the same number he requested on 10/15/2018.  Marre was emailed a **VERIZON EMERGENCY SITUATION DISCLOSURE** form; and, as with prior requests, Marre checked "yes" indicating that the situation potentially involved the danger of death or serious physical injury to a person.  The signature line stated  **"I certify that the foregoing is true and correct and understand that Verizon Wireless may rely on this form to make an emergency disclosure to my law enforcement agency or government entity pursuant to 18 U.S.C. 2702 (b)(8) or 2702 (c)(4)."**  This form was signed "Matthew Marre" and dated 10/20/18, (not 10/21/2018).  Verizon employees provided Matthew Marre Location (GPS) information for the cell phone 970-673-2072 on 10/21/2018 and again on 10/22/2018 when Matthew Marre called back for an update on the location (GPS) of the same cell phone.

33. On 11/18/2018 (Verizon event #6) Matthew Marre called the Verizon Law Enforcement Help Center and requested locator serviced (GPS) on cell phone 208-320-2731.  Marre was emailed an emergency form, however it was not returned.  Verizon employee AT noted in her call logs that Marre claimed the emergency was a suicidal subject.

34. Verizon employee JF became suspicious that Marre may not be a law enforcement officer.  JF called 970-408-0773, which Marre listed as the "main" number for Marre's agency.  JF talked to an unknown male who stated that they were not a law enforcement agency.

**T-Mobile**

35. T-Mobile, whose corporate office is located at 4 Sylvan Way Parsippany, NJ 07054, indicated they have nine separate cases where a person did the following:

a. Represented himself to be Investigator Matthew Marre;

b. Used phone number 720-354-0721 each time he called; and

c. Represented exigent circumstances claiming in all nine below listed cases the targets of the ping requests were suicidal and had the means to carry out the suicide.

36. Further, all T-Mobile requests were emailed to and from "Matthew.Marre@cotf.us"; and all requests contained the same data as detailed below on the **T-Mobile/Metro PCS Exigent Form.** This form was completed by Mathew Marre and returned to T-Mobile on each of the nine requests.  The provided information on the form is as follows:

**Name of Government Entity:** Colorado Public Safety-Fugitive Task Force

**Government Entity Street Address:** 308 Mountain View Ave Johnstown, CO 80513

**Government Entity Phone:** 720-354-0721

**Requesting Officer/Agent Name, Title/Badge or ID#:** Matthew Marre, Investigator (6003)

**Officer/Agent E-mail:** Matthew.Marre@cotf.us.

37. All nine forms had the same oath printed that stated in part "**I Understand that I may be held liable for civil and/or criminal penalties either as an individual, as an organization, or both. By signing this form, I certify the information herein is true and correct. Pursuant to 18 U.S.C. 2518, 2702, 3125 and any other applicable Federal or State statute**" and later in the same oath  "**This request is made pursuant to 47 U.S.C. 222 (g) , 18 U.S.C. 2702 and 47 C.F.R. 20.18 and subject to state and federal perjury penalties.**" All nine forms were dated and signed "Matthew Marre".

38. Below lists the ten numbers requested, the dates of the requests, and the data requested:

a. Requested 05/28/2018, on 720-410-0610, for Continuous Location (pings every 15 min for 48 hours)

b. Requested 06/05/2018, on 720-676-5727, for Call retail records with cell sites (last 48 hours).

c. Requested 07/13/2018, on 720-281-6703, for Continuous Location (pings every 15 min for 48 hours).

d. Requested 08/26/2018, on 303-842-8350, for Continuous Location (pings every 15 min for 48 hours).

e. Requested 09/03/2018, on 720-220-1375 and 720-421-8174 for Call retail records with cell sites (last 48 hours) and for Continuous Location (pings every 15 min for 48 hours).  This form had both numbers listed.

f. Requested 09/15/2018, on 719-896-9907, for Continuous Location (pings every 15 min for 48 hours).

g. Requested 09/27/2018 on 719-896-9907 and 719-339-1205, for Continuous Location (pings every 15 min for 48 hours)

h. Requested 10/24/2018 on 1-312-792-6465 for Call retail records with cell sites (last 48 hours) and for Continuous Location (pings every 15 min for 48 hours).

i. Requested 11/07/2018 on 1-970-347-0670 for Call retail records with cell sites (last 48 hours) and for Continuous Location (pings every 15 min for 48 hours).

39. Your affiant knows the **<u>Colorado Department of Public Safety</u>**, which is referenced in this affidavit, is a Division of the state of Colorado Government that has various divisions under it to include law enforcement groups of Colorado State Patrol and the Colorado Bureau of Investigation.  The state of Colorado website describes the **Colorado Department of Public Safety** as follows:  ***"Throughout the state of Colorado, basic public safety services are delivered through local units of government. County sheriffs enforce state laws in Colorado's counties, and local police departments enforce state and local laws within cities. The Colorado Department of Public Safety provides help to sheriffs, police and fire departments, and emergency managers whenever local officials request assistance".***

40. Your affiant is familiar with Colorado law regarding law enforcement officers.  Matthew Marre is currently unable to apply for and be hired as a law enforcement officer because he has a prior felony conviction.

41. On January 17, 2019 Detective Thrapp requested an 18 U.S.C. 2703 (d) court order for the cell phone number of 720-354-0721 which is assigned and maintained by T-Mobile US Inc. This order was reviewed and signed by United States Magistrate Judge Mix and forwarded via the United States Attorney's Office to your affiant, who served the order on T-Mobile US Inc. The order requested toll records of numbers called to and from the target number 720-354-0721 from January 01, 2018 through December 31, 2018.

42. On January 18, 2019 TFO Thrapp requested warrant to search  account activity, content, and records from T-Mobile regarding emergency law enforcement requests made by Matthew Marre using phone numbers 970-408-0773 and 720-354-0721 and the responses to such requests for the following phone numbers:  (1) 720-410-0610; (2) 720-676-5727 ; (3) 720-281-6703; (4)  720-220-1375;  (5) 720-421-8174, (6) 719-896-9907; (7) 719-339-1205;  (8) 303-842-8350, (9) 312-792-6465, and (10) 970-347-0670 . This search warrant was reviewed and signed by United States Magistrate Judge Mix on January 18, 2019 (sw-05058 KLM).

43. On January 18, 2019 TFO Thrapp received the results of the above described 2703 (d) court order from T-Mobile US Inc. which showed on March 21, 22, and 23, 2018, the phone number of 720-354-0721 that was in the care and custody of Matthew Marre called the T-Mobile Law Enforcement line phone number 973-292-8911 twice on March 21, 2018, at 10:53 pm, and 11:27 pm, once on March 22, 2018, at 02:35 am, and once on March 23, 2018 time at 04:26 am.

44. TFO Thrapp requested from T-Mobile US Inc. the reason for the Marre phone calls on March 21, 22, and 23, 2018, and T-Mobile representatives stated the information requested was protected customer information and advised that they needed a court order to produce the information.

45. TFO Thrapp reviewed law enforcement records and found on March 23, 2018 Matthew Marre contacted the Arapahoe County Sheriff's Department Dispatch Center in Arapahoe County Colorado stating he and his coworker (later identified as Cody Daig) were bondsman and believed the person they were looking to detain on bond violations, was burglarizing a residence in Arapahoe County Colorado.

46. Uniformed Arapahoe County Sheriff Deputy Mackay responded to Marre's location of 7550 South Blackhawk Street in Arapahoe County and contacted Matthew Marre and Cody Daig. Daig advised Deputy Mackay that he and Marre had a "ping" on their wanted person's cell phone that showed the suspect in the east of the complex.   As Sheriff's Deputies were looking for Roberts, Marre and Daig located and handcuffed Roberts in a field and then re-contacted Sheriff's Deputies.

47. During the interview of Marre by Arapahoe Sheriff's deputies, Marre advised he owns "Colorado PSC LLC", and was contracted by "Detail Bail Bonds to recover Christian Roberts" after he (Roberts), failed to show up in court on charges he was on bond for.

48. Marre advised Sheriff's Deputies while looking for Roberts initially found him, and after losing him in a foot chase they (Marre and Daig) went back to their truck and "refresh the suspects GPS location on our laptop."  Marre then advised deputies "the new GPS Ping put

the suspect on the southeast side of the complex" where Marre and Cody Daig then responded to and located Roberts hiding by bushes.

49. Cody Daig was interviewed by Arapahoe County Sheriff's deputies who advised that he works for "Colorado PSE" as a "bail enforcement" person and on March 23, 2018 he and Marre were looking for Christian Roberts and at a point they observed Roberts momentarily, and then lost sight of him.  Marre and Daig returned to their truck, and per Daig, an "updated location ping came in." Daig continues stating "tracking that ping took us to the middle of the field" where Marre and Daig located Roberts.

50. TFO Thrapp believed based on this March 23, 2018 detention of Christian Roberts, both Daig and Marre were working in a conspiracy, to track Roberts by monitoring his cell phone GPS location by having a cell phone provider "pinging" the phone to show the location of the phone at any time. Your affiant knows that this "pinging" of a cell phone can only be done by law enforcement in cooperation with the cell phone carrier that provides service to the specific cell phone.

51. Based on TFO Thrapp's investigation described in this affidavit, he believed the actions and statements of Marre and Daig on March 23, 2018, show the phone calls from Marre cell phone on March 21, 22, and 23, 2018 to the T-Mobile Law Enforcement line are consistent with unlawful acts to obtain information from T-Mobile.

52. TFO Thrapp's prior request for a search warrant for T-Mobile records requested specific information on ten individual cell phones known to TFO Thrapp as being unlawfully compromised by Marre.

53. TFO Thrapp did not know the cell phone number used by Cody Daig or other unknown conspirators who are working with Marre nor does TFO Thrapp know the cell phone in the care and custody of Christian Roberts on March 23, 2018.

54. TFO Thrapp believed based on the March 23, 2018 events, Cody Daig was aware of and was in contact with a cell phone company "pinging" the phone in the possession of Christian Roberts on March 23, 2018, and that Marre and Daig were "pinging" a T-Mobile phone.

55. On February 08, 2019 TFO Thrapp requested a Search warrant for T-Mobile US Inc. for *Any and all documents, data and information, including location information, relating to the investigation of unlawful legal demands submitted to T-Mobile by Matthew Marre and any co-conspirators from March 20, 2018 to November 08, 2018.* The search warrant was reviewed and approved by United States Magistrate Judge S. Kato Crews and served by TFO Thrapp on T-Mobile via email.

56. On February 12, 2019 TFO Thrapp received results from this search warrant from T-Mobile. The seven returned results each had an emailed document from Matthew Marre, claiming to a law enforcement officer for the Colorado Public Safety, investigating a suicidal person, and each request needed exigent cell phone pings on seven separate occasions from March 22, 2018 until October 28, 2018.

57. TFO Thrapp, with the assistance of your affiant, reviewed one of the cell phones GPS location data provided to Matthew Marre on one of the seven exigent requests.

58. On March 22, 2018, Marre requested from T-Mobile, up to 48 hours of "continuous pings" (GPS location data) for cell phone number 720-645-7646. T-Mobile advised it did supply Marre the requested data on this cell phone.

59. Your affiant, using a mapping tool, plotted the latitude and longitude given to Marre, for cell phone number 720-645-7646, and the data showed the cell phone being at a location at or about 7500 S Blackhawk, in Arapahoe County, on March 23, 2018, at the time Christian Roberts, referenced above in this affidavit was detained by Matthew Marre and Cody Daig.

60. TFO Thrapp conducted a preliminary review of the other six cell phone numbers T-Mobile provide to your affiant on February 12, 2019, that had been requested by Marre. It is believed three of the six requested cell numbers are also relevant to persons arrested at or about the time Marre requested exigent GPS data from T-Mobile.

61. TFO Thrapp requested GPS location data for the cell phone of Matthew Marre from January 01, 2018 to this current date of March 27, 2019 as your affiant believes Matthew Marre uses his cell phone, number 720-354-0721, to contact the legal offices of Sprint, T-Mobile, ATT and Verizon, posing as a law enforcement officer to commit federal crimes as referenced in this affidavit.

62. TFO Thrapp believed Matthew Marre, together with others, was still actively acting in a capacity as a "bounty hunter" and was still attempting to exploit national cell phone data bases falsely claiming to be a law enforcement officer by either using his existing ruse as described in this affidavit or claiming to be a different law enforcement officer and law enforcement department.

63. Accordingly, on March 27, 2019 TFO Thrapp applied for and received a federal court order signed by U.S. Federal Magistrate Judge Scott T. Varholak for the installation and use of Precise Location Information and Data/GPS Information on a Cellular Telephone Assigned 720-354-0721. This court order allowed for "ping" data to be submitted by T-Mobile that

located Marre's cell phone every 15 minutes via real time GPS location services to assist in locating Marre.

64. On April 01, 2019, TFO Thrapp reviewed data from the court approved Precise Location Information and Data/GPS Information on a Cellular Telephone Assigned 720-354-0721. The data showed that Matthew Marre's cell phone was at or near 308 Mountain View Road, in the town of Johnstown, Colorado.

65. On April 01, 2019, FBI Special Agent Joel Nishida went to 308 Mountain View Road Unit B in Johnstown, Colorado for the purpose of obtaining a legal description and observe and activity at this location relevant to the ongoing criminal investigation.

66. TFO Thrapp found that on the fraudulent applications referenced in this affidavit submitted by Marre to "T-Mobile" and "Sprint", Marre claimed his work address was 308 Mountain View "Ave" or "Avenue".  SA Nishida took a photo of the street sign for this street which shows "MOUNTAIN VIEW RD."

67. On April 1, 2019 at about 07:15 a.m. SA Nashida observed Matthew Marre's black Ford Taurus, Colorado license DDA 954, parked in front of 308 Mountain View Road Unit B.

68. DDA 954 lists to Colorado PSE LCC. This LLC is listed with the Colorado Secretary of State's Office with Matthew Marre as the registered agent.

69. SA Nishida later watched a white Dodge pull up to 308 Mountain View Road.  A white male exited the vehicle and appeared to contact Marre.  Shortly after, the white male and Matthew Marre, who was identified by SA Nishida exiting Unit B, got into Marre's black Ford Tarus and drove away from the area.  Based on surveillance limitations, SA Nishida was unable to

follow Marre's vehicle. TFO Thrapp reviewed Marre's cell phone "ping" data and found that it was located at or near a café at 2842 SE Frontage Road in Johnstown, Colorado.

70. SA Nishida went to the café located at 2842 SE Frontage Road in Johnstown and positively identified Marre in the business.  Marre's black Ford was in the parking lot.  At about 10:27 a.m., Marre and the unidentified white male exited the café and got into Marre's black Ford and returned to 308 Mountain View Road Unit B and re-entered the business. This was also confirmed by the "pings" TFO Thrapp was reviewing on Marre's cell phone.

71. On April 2, 2019, TFO Thrapp contacted Beth Ham, senior investigator for the State of Colorado Department of Regulatory Agencies.  Ham's duties include investigating compliance of the State of Colorado rules and regulations surrounding Bail Bond Companies. Ham advised "bail recovery agents" also called "bounty hunters" are not currently regulated by the State of Colorado.

72. Ham advised that in her training and experience Bail Bonds companies do collect information from persons they post bond for in pending criminal matters.  Typically they collect the arrested person's name, address, phone numbers, names of family and friends, to include any contact information and other data that could be used to locate the arrested person if they fail to abide by bond conditions.

73. Ham stated the information requested by Bail Bond companies is not on a standard state form, and is often called an "application" to be filled out by the arrested person requesting bond.  Ham believes the information obtained by the bail bond companies would be transferred to the "Bail recovery agents" and or "bounty hunters" for locating and detained the person on the bond.

74. TFO Thrapp believed that during the above listed March 23, 2018 incident, Marre and his co-conspirator Cody Daig, illegally obtained information from T-Mobile using Matthew Marre's cell phone and then received, stored, and plotted the illegally obtained information on a "Laptop" (common term for laptop computer) in the care and custody of Marre.  Marre did this inside a vehicle at the time.

75. TFO Thrapp further believed since January 2018, Matthew Marre obtained requests from bail bond companies to locate and detain persons wanted for bail bond violations.  TFO Thrapp believed that bail bond companies supplied Marre with personal information to include phone numbers of the wanted person, his family and friends, and that Marre (at least 16 times as referenced in this affidavit) used phone numbers related to persons in default of their bond conditions to illegally obtain data from Verizon, Sprint and T-Mobile.

76. TFO Thrapp obtained a search warrant for the business premises of Colorado PSE LLC located at 308 Mountain View Road Unit B, Johnstown, Weld County, Colorado.  During execution of that warrant, officers found Marre's vehicle parked at the location.  The vehicle is a black Ford Taurus, Colorado License plate number DDA 954.

77. While executing both the search warrant at the premises on April 4, 2019, officers from the SWAT team checked Marre's car for their safety in executing the warrant to be sure the suspect or no other person was hiding inside the vehicle.  When they looked inside, officers observed a laptop computer, documents and other items that appeared related to Marre's bail bond activities.  Officers did not search the car or examine any of the items.  The car was impounded and towed to the FBI secured lot located at 8000 East 36th Avenue, Denver, Colorado.

78. Marre was arrested on April 4, 2019, during the execution of the search warrant, on a Federal arrest warrant TFO Thrapp had obtained contemporaneously with the search warrant.  Marre was given an opportunity to provide a statement, but declined.  He was transported to the Denver County Jail, and later transferred to the custody of the U.S. Marshal's Service.

79. After his arrest, pursuant to the search warrant, a cellular phone in Marre's possession was searched by your affiant.  Your affiant noted numerous photos of subjects who it appeared Marre had taken into custody and transported to Metro area detention centers.  Your affiant also noted images of what appeared to be forms documenting the arrests of subjects by Marre for failing to appear on bond, including some subjects your affiant recognized as being the subscribers associated to some of the GPS location information illegally obtained by Marre.  There were also images of checks from bail bond companies which appeared to be payment for the apprehension of some of the subjects associated with some of the GPS location data illegally obtained by Marre.  Your affiant also noted images of a laptop computer screen which appeared to show Marre attempting to get exigent data from the Facebook social media company.  Your affiant knows Facebook can sometimes provide precise location data for their users.   On the request, the email address associated to the request was "matthew.marre@leu-rescue.org", and Marre was identified as a "Lieutenant" with the organization.  Your affiant learned the Longmont Emergency Unit is not affiliated with any government agency.  Facebook was contacted and advised they did not have any requests associated to that name, email address, or Marre's associated phone number.

80. On April 8, 2019, your affiant and TFO met with Cody Daig and his attorney reference this investigation.  Daig agreed to cooperate with the investigation and provided the following information to TFO Thrapp and your affiant:

a. Daig has known Marre since approximately January of 2015 and he also knows some of Marre's associates, Ryan Medhurst, Wayne Tyner, and Chris Glenn.  Daig has done "ride alongs" with Marre when he was searching for fugitives for bail bond companies, including Christian Roberts in Arapahoe County, Colorado, in March of 2018.

b. Daig's full-time employment is in the Information Technology sector.  Daig told your affiant and TFO Thrapp he assisted Marre with his business IT needs and identified Marre's business as Colorado Public Safety.  Daig said he maintained an email server and on the server, he maintained the domain "@cotf.us."  He admitted the domain was not an official government server and that he had created the domain at Marre's request.  Your affiant knew the email server with that domain name was used by Marre to receive email from the cellular service providers about his exigent GPS location request.  Daig said he maintained a physical server until he moved in October, 2018.  Daig later turned over the physical server to TFO Thrapp.  He said when he moved, he created an account with Digital Ocean, a cloud server company.  Daig said he moved the data on the physical server to a virtual email server on the Digital Ocean servers with the same "@cotf.us" domain name and maintained the email account for Marre.  Daig identified the Digital Ocean account on which he maintained the email server as "cody@daig.me."  Your affiant sent a preservation order to Digital Ocean to preserve the data on the account.

c. Daig said he also provided financial services for Marre including billing for Colorado Public Safety.  Daig said Marre would send him a text with information about his fugitive recoveries and his bill, and Daig would create an invoice to send to the bail bond company using a program called "QuickBooks."  "QuickBooks" is a publicly available on-line program, and Daig said the website he used to log into the account was "qbo.intuit.com" and the account name was "ColoradoPSE@gmail.com."  Your affiant is aware that "QuickBooks" is a program created by a company called "Intuit" and that the data is maintained on servers administered by Intuit.  Daig said he would go into a Google Drive account (a "cloud" storage account) and obtain information and case numbers for the billing.  Daig identified the Google Drive account as being associated with the Google email account "ColoradoPSE@gmail.com", and said the account had documents, .pdf files, and photos related to Marre's fugitive recovery business. Your affiant noted this email account was also associated with an account on Marre's cellular phone.  Daig believed the bond companies would send Marre information about fugitives though this email account.

d. Daig said he also maintained the email server for the Longmont Emergency Unit and that Marre had an email account "Matthew.Marre@leu-rescue.org" that was provided to him by Daig.  He said the Longmont Emergency Unit email accounts were maintained on Google servers.  This appeared to be the account related to the images found on Marre's cellular phone showing an exigent request to Facebook, Inc.

## BACKGROUND CONCERNING ON-LINE ACCOUNTS

81. In my training and experience, your affiant has learned that Intuit, Inc., provides a variety of on-line services, including on-line financial records management, to the public.  Subscribers

obtain an account by registering with Intuit, Inc.  During the registration process, Intuit, Inc., asks subscribers to provide basic personal information.  Therefore, the computers of Intuit, Inc., are likely to contain stored financial records for Intuit, Inc. subscribers and information concerning subscribers and their use of Intuit, Inc. services, such as account access information, transaction information, and account application information.  In your affiant's training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

82. In your affiant's training and experience, on-line service providers generally ask their subscribers to provide certain personal identifying information when registering for an email account.  Such information can include the subscriber's full name, physical address, telephone numbers and other identifiers, alternative email addresses, and, for paying subscribers, means and source of payment (including any credit or bank account number). In your affiant's training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.  Based on your affiant's training and experience, your affiant knows that, even if subscribers insert false information to conceal their identity, this information often provides clues to their identity, location, or illicit activities.

83. In your affiant's training and experience, on-line service providers typically retain certain transactional information about the creation and use of each account on their systems.  This information can include the date on which the account was created, the length of service, records of log-in (*i.e.*, session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to

connect to the account (such as logging into the account via the provider's website), and other log files that reflect usage of the account.  In addition, on-line service providers often have records of the Internet Protocol address ("IP address") used to register the account and the IP addresses associated with particular logins to the account.  Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the on-line account.

84. In your affiant's training and experience, in some cases, on-line service users will communicate directly with an on-line service provider about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users.  On-line providers typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications. In your affiant's training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

85. As explained herein, information stored in connection with an on-line service user's account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion.  In your affiant's training and experience, the information stored in connection with an on-line service user's account can indicate who has used or controlled the account.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.  For example, on-line records may indicate who used or controlled the account at

a relevant time.  Further, information maintained by the provider can show how and when the account was accessed or used.  For example, as described below, on-line service providers typically log the Internet Protocol (IP) addresses from which users access the email account, along with the time and date of that access.  By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the email account access and use relating to the crime under investigation. This geographic and timeline information may tend to either inculpate or exculpate the account owner.  Additionally, information stored at the user's account may further indicate the geographic location of the account user at a particular time (*e.g.*, location information integrated into an image or video sent via email).  Last, stored electronic data may provide relevant insight into the account owner's state of mind as it relates to the offense under investigation. For example, information in the on-line financial account may indicate the owner's motive and intent to commit a crime (*e.g.*, communications or transactions relating to the crime), or consciousness of guilt (*e.g.*, deleting records in an effort to conceal them from law enforcement).

## CONCLUSION

86. Based on the investigation described above, probable cause exists to believe that in the subject accounts described in Attachment A, will be found evidence, fruits, and instrumentalities of a violation of 18 U.S.C. § 1039, Fraud in Connection with Obtaining Confidential Phone Records.

87. Your affiant, therefore, respectfully request that the attached warrant be issued authorizing the search and seizure of the items listed in Attachment B.

I declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge, and belief.

*s/Christopher Pyler*
Christopher Pyler, Task Force Officer
FBI (Denver) Safe Streets Task Force

Sworn to before me this 24th day of April, 2019.

United States Magistrate Judge

Application for search warrant was reviewed and is submitted by Greg Holloway, Assistant United States Attorney